1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

WOODRIDGE DEVELOPMENT, LLC;
and GF DEVELOPMENT, LLC,

                      Plaintiff,

      v.

FEDERAL DEPOSIT INSURANCE
CORPORTATION, as Receiver for
LIBERTYBANK; LANDMARK
DEVELOPMENT VENTURES, INC.;
and JOSEPH STURTEVANT,

                  Defendants.

-----------------------------------------------------

FEDERAL DEPOSIT INSURANCE
CORPORATION, as Receiver for
LIBERTYBANK,

            Third-Party Plaintiff,

v.

CLARK COUNTY TITLE Co., a
Washington corporation,

          Third-Party Defendant.

CASE NO. 11-5798 RJB

ORDER ON MOTION TO STAY

This matter comes before the Court on the Federal Deposit Insurance Corporation's ("FDIC") Motion to Stay Proceedings.  Dkt. 5.  The Court has considered the pleadings filed in favor and in opposition to the motion and the record, and is fully advised.

This foreclosure case arises out of a 2007 loan Plaintiffs contend was fraudulently acquired from a now failed bank, LibertyBank.  Dkt. 1.  In the instant motion, the FDIC, as receiver for LibertyBank, seeks an order staying all proceedings in this case to allow Plaintiffs to exhaust their administrative remedies against the FDIC under 12 U.S.C. § 1821(d).  For the reasons set out below, the FDIC's motion should be granted and the matter should be stayed for 180 days from the date of this order.

## I.  FACTS AND PROCEDURAL HISTORY

### A.  FACTS

According to the Complaint, Plaintiffs are Washington limited liability companies.  Dkt. 1, at 8.  The members of Plaintiff Woodridge Development LLC ("Woodridge") are Plaintiff GF Development LLC ("GF") and Defendant Landmark Development Ventures, Inc. ("Landmark"), each of which holds a 50% interest in Woodridge.  *Id.*  GF's sole manager and member is Rick Goode.  Dkt. 16.  Landmark's sole director, shareholder, and officer is Joseph Sturtevant.  Dkt. 13-1, at 19.  Landmark has filed for Chapter 7 bankruptcy protection, and Plaintiffs assert Landmark's only asset is Woodridge.  Dkt. 15.

Woodridge owns slightly less than ten acres of land in Clark County Washington.  Dkt. 16.  According to the Complaint, in January of 2007, Joseph Sturtevant, on behalf of Woodridge's member Landmark, executed a note, secured by a deed of trust on this property, for a $2,000,000 loan from LibertyBank.  Dkt. 1, at 8-9.  According to the Complaint, Mr. Sturtevant provided LibertyBank with fraudulent documents, which included forgeries of Mr. Goode's

1    signature. *Id.* The Complaint asserts that Mr. Sturtevant did not have the authority to execute the

2    note, or encumber the property on behalf of Woodridge. *Id.*, at 9-10.  It asserts that the proceeds

3    of the $2,000,000 loan were not used for the benefit of Woodridge. *Id.,* at 9-11.  Mr. Sturtevant

4    purportedly got a modification of the loan (extending the due date to April of 2009) using the

5    same methods. *Id.*

6            The loan was not repaid and LibertyBank began nonjudicial foreclosure proceedings.  On

7    September 30, 2009, Plaintiffs filed a complaint in Clark County Washington, seeking

8    declaratory relief that the LibertyBank note and deeds of trust were invalid and unenforceable

9    due to forgery.  Dkt. 13-1, at 2-7.  LibertyBank filed cross claims against Clark County Title Co.

10   In Plaintiffs' Second Amended Complaint, they also assert claims against Lankmark and Mr.

11   Sturtevant for criminal profiteering under RCW 9A.82.  Dkt. 1, at 10.

12           On June 11, 2010, the Clark County Superior Court granted Plaintiffs' motion for

13   summary judgment, in part, and denied it, in part.  Dkt. 13-11, at 48.  Plaintiff sought a summary

14   declaration from the court that the note and deeds of trust were void.  *Id.*  The Court held that

15   there were factual disputes on the issues of express or implied actual authority and that those

16   issues would have to be decided at trial.  *Id.*  It granted Plaintiffs' summary judgment motion on

17   the issues of apparent authority, equitable subrogation, and equitable estoppels.  *Id.*  The court

18   denied the Defendants' motion for summary judgment.  *Id.*

19           Then, on July 30, 2010, the State of Oregon's Department of Consumer and Business

20   Services ("Oregon DCBS") declared Liberty Bank insolvent and took possession of the bank's

21   business, properties, and assets.  Dkt. 1, at 2.  According to the FDIC, the LibertyBank note at

22   issue here, as well as the deeds of trust securing the note, were assets of LibertyBank at the time

23   the FDIC accepted appointment as receiver of LibertyBank made by the Oregon DCBS on July

24

ORDER ON MOTION TO STAY- 3

30, 2010.  Dkt. 7, at 2.  The FDIC maintains that the note and deeds of trust are assets of the LibertyBank receivership.  *Id.*  The FDIC states that as receiver for LibertyBank, on January 10, 2011, it sold and transferred to Home Federal Bank the note and deeds of trust at issue here, subject to certain "put back" rights.  *Id.*  Home Federal Bank later exercised its "put back" rights and on August 29, 2011, Home Federal Bank transferred the note and deed of trust back to the FDIC.  *Id.*

On September 11, 2011, upon motion of the FDIC, the Clark County Superior Court entered an order substituting the FDIC, as Receiver for LibertyBank, as a Defendant and Third Party Plaintiff in this case.  Dkt. 1, at 4.  The FDIC removed the case to this Court on September 29, 2011.  *Id.*

**B.  PENDING MOTION**

The FDIC now moves for a 180 day stay of all proceedings in this case.  Dkts. 5 and 21. It argues that under the certain provisions of Financial Institutions Reform, Recovery, and Enforcement Act of 1989("FIRREA"), the Plaintiffs here must exhaust their administrative remedies before seeking a judicial remedy.  *Id.*

Plaintiffs oppose the motion, arguing that the Court has not lost jurisdiction because Plaintiffs' claims are not subject to the administrative claims process.  Dkt. 15.  Plaintiffs further argue that there is no need for a stay unless the FDIC wants to risk losing their title insurance coverage.  *Id.*

## II.    DISCUSSION

FIRREA limits judicial review as follows:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over-
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the

Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D). "The phrase 'except as otherwise provided in this subsection' refers to a provision that allows jurisdiction after the administrative claims process has been completed." *McCarthy v. FDIC*, 348 F.3d 1075,1078 (*citing Sharpe v. FDIC*, 126 F.3d 1147 (9th Cir.1997)). In the Ninth Circuit, the exhaustion rule is not limited to creditors, but applies as well to debtors with claims "that affect the assets of a failed institution." *Id.,* at 1080.

This case should be stayed for 180 days to permit Plaintiffs an opportunity, if they so choose, to exhaust their administrative remedies. "The text of § 1821(d)(13)(D) plainly states that *any* claim or action that asserts a right to assets of a failed institution is subject to exhaustion." *Id.,* at 1077. The note and deeds of trust here are assets of a failed institution, LibertyBank. Plaintiffs' claims against the FDIC, as Receiver for LibertyBank, if successful, would "affect the assets" of LibertyBank – that is render the note and deed of trust invalid.

Plaintiffs argue that their claims for declaratory relief are really affirmative defenses to the nonjudicial foreclosure action, and so the exhaustion statute does not apply. Dkt. 15, at 8 (*citing Resolution Trust Corporation v. Midwest Federal Savings Bank of Minot*, 36 F.3d 785 (9th Cir. 1993). Plaintiffs argue that unlike the debtor in *McCarthy*, they are not seeking monetary damages, and so the exhaustion requirement does not apply to them. Dkt. 15. They argue that they are more like the debtor in *Resolution Trust Corporation v. Midwest Federal Savings Bank of Minot*, 36 F.3d 785 (9th Cir. 1993). *Id.*

*Midwest* was a judicial foreclosure action instituted by the Resolution Trust Corporation ("RTC") as Receiver. *Id.* The mortgagee answered the complaint and asserted counterclaims for mutual mistake and for "reformation of the terms of the loan agreement to include a nonrecourse

provision." *Id.*  On appeal, the RTC argued that the district court did not have jurisdiction over
the reformation counterclaim due to the mortgagee's failure to exhaust administrative remedies.
*Id.*  The Ninth Circuit held that the "counterclaims" for mutual mistake and "reformation of the
terms of the loan agreement to include a nonrecourse provision," asserted in the mortgagee's
answer, were really "affirmative defenses."  *Id.*  In doing so, the Ninth Circuit noted that "mutual
mistake" is often considered an affirmative defense, and in any event, under Fed. R. Civ. P. 8,
the Court could construe "pleading as an affirmative defense rather than a counterclaim 'if
justice so desires.'"  *Id.,* at 792.  The Court then held that the exhaustion statute did not apply to
the mortgagee's "affirmative defenses" of mutual mistake and reformation of the contract to
include a particular provision.  *Midwest*, at 790.  The Ninth Circuit concluded that:

> [A]  district court has subject matter jurisdiction over affirmative defenses raised
> by a defendant who, prior to being sued by the RTC, was not a creditor of the
> RTC and who had no independent basis for filing a claim against the RTC, even
> though the defendant had not exhausted the administrative procedures established
> by FIRREA.

*Id.*  "By so holding, we avoid the patently absurd consequence of requiring [the mortgagee] to
file as administrative claims all potential affirmative defenses which might be asserted in
response to unknown and unasserted claims by the RTC."  *Id.*, at 793 (*internal quotations
omitted*).

In *McCarthy*, the case relied upon by the FDIC here, the plaintiff acquired pre-approval
of a loan, to be secured by 10 acres of property, with a division of a bank that was in FDIC
receivership.  *McCarthy,* at 1077.  The bank unilaterally changed the terms of the loan, requiring
the loan be secured by 35 acres and at a higher interest rate, and the purportedly offered it to
McCarthy on "a take it or leave it basis."  *Id.*  "McCarthy filed suit in federal district court
alleging that he was coerced into accepting the new loan and that he would not have executed

1   this loan had he known" of the FDIC's receivership.  *Id.*  He sought "a declaration that the FDIC,

2   [and the failed institutions] violated their fiduciary duties and damaged McCarthy in the amount

3   of $50,400."  *Id.*  He claimed that the $50,400 "should be offset against his loan" and the interest

4   rate modified.  *Id.*  The Ninth Circuit held that the exhaustion statute applied, reasoning as

5   follows:

6   > McCarthy seeks the recovery of $50,400 for breach of fiduciary duty. Even
    > though he asks that the payment be awarded by way of "offset" against the

7   > balance due on his loan from Superior, it is a payment nonetheless. The payment
    > would diminish Superior's assets, as would lowering the interest rate and

8   > restricting remedial options that are available to the receiver. There is no reason
    > why McCarthy's claims may not be processed administratively as effectively as

9   > Henderson's were. And, regardless of whether he is a creditor or a debtor making
    > claim to the bank's assets, requiring exhaustion furthers the purpose of FIRREA

10  > "to ensure that the assets of a failed institution are distributed fairly and promptly
    > among those with valid claims against the institution" and promptly to "wind up

11  > the affairs of failed banks."

12  *Id.*, at 1079.

13      Although the Plaintiffs' situation is somewhat analogous to both cases, the case should be

14  stayed, in order to give Plaintiffs the opportunity to exhaust administrative remedies with the

15  FDIC.  Like the debtor in *McCarthy*, Plaintiffs here instituted the action against LibertyBank,

16  and asserted additional claims against additional parties.  The mortgagee in *Midwest* was solely a

17  defendant.  Plaintiffs here were not in the position of having to guess what "potential affirmative

18  defenses" might be "asserted in response to unknown and unasserted claims."  *Midwest,* at 793.

19  Moreover, as stated above, Plaintiffs' case, if successful against the FDIC, would invalidate the

20  note and deeds of trust, "affect the assets" of LibertyBank receivership.

21      Plaintiffs' argue that the FDIC must disallow their claim in order to keep the title

22  insurance on the property.  Plaintiffs argument does not provide a basis to ignore the statutory

23  requirements under FIRREA.  Further, the FDIC asserts that requiring the Plaintiffs to exhaust

24

ORDER ON MOTION TO STAY- 7

1   their administrative remedies would not be futile and points out it has a "statutory obligation to

2   complete the process."  Dkt. 21.  It further argues that the existence or non-existence of title

3   insurance will not alter its analysis on whether to allow Plaintiffs' claims.  *Id.*

4       Plaintiffs' reference to the decision of Home Federal Bank to "put back" the note and

5   Deeds of trust to the FDIC is likewise unavailing.  It appears Plaintiffs are arguing that the FDIC

6   is not the real party in interest.  The Clark County Superior Court, however, has ruled on this

7   issue in its September 29, 2011, order substituting the FDIC as receiver as Defendant and Third

8   party Plaintiff.  Dkt. 13-18, at 43-44.

9       This case should be stayed until April 6, 2012.  All pending motions should be stricken.

10  Deadlines should be reset as follows:

11  Deadline for FRCP 26(f) Conference:          04/16/2012

12  Initial Disclosures Pursuant to FRCP 26(a)(1):     04/23/2012

13  Combined Joint Status Report and Discovery
     Plan as Required by FRCP 26(f) and Local

14  Rule CR 16:                        04/30/2012.

15

16                        **III.**     **ORDER**

17       It is **ORDERED** that**:**

18          •   Federal Deposit Insurance Corporation's Motion to Stay Proceedings (Dkt. 5) **IS**

19             **GRANTED;**

20          •   This case is **STAYED** until **APRIL 6, 2012;**

21          •   All pending motions and deadlines **ARE STRICKEN;**

22

23

24

- The following deadlines are **RESET** as follows:

  Deadline for FRCP 26(f) Conference:                04/16/2012

  Initial Disclosures Pursuant to FRCP 26(a)(1):     04/23/2012

  Combined Joint Status Report and Discovery
  Plan as Required by FRCP 26(f) and Local
  Rule CR 16:                                        04/30/2012.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 7th day of November, 2011.

_____
ROBERT J. BRYAN
United States District Judge